**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John Rodriguez,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-22-08184-PCT-MTL<br><br>**ORDER** |

At issue is the denial of Plaintiff John Rodriguez's Application for Disability Insurance Benefits under the Social Security Act by the Commissioner of the Social Security Administration. Plaintiff filed a Complaint (Doc. 1) with this Court seeking review of that denial. The Court has reviewed the briefs (Docs. 10, 15, 16) and the Administrative Record (Doc. 9, "A.R."), and now affirms the Administrative Law Judge's ("ALJ") decision.

**I. BACKGROUND**

Plaintiff filed an Application for Disability Insurance Benefits on October 11, 2020. (A.R. at 214-17.) Plaintiff's claim was denied initially on February 3, 2021, and upon reconsideration on April 27, 2021. (*Id.* at 65, 103.) Thereafter, Plaintiff filed a written request for a hearing, (*Id.* at 124-25), and a telephonic hearing was held on August 27, 2021. (*Id.* at 36-64.) The ALJ denied Plaintiff's application on September 29, 2021 (*Id.* at 17-31.) The Appeals Council denied Plaintiff's request for review on August 9, 2022. (*Id.* at 1-3.) Plaintiff now seeks judicial review with this Court pursuant to 42 U.S.C. § 405(g).

The Court has reviewed the record and will discuss the pertinent evidence in addressing the issues raised by the parties. Upon considering the medical evidence and opinions, the ALJ evaluated Plaintiff's disability claim based on the following severe impairments: post-traumatic stress disorder, depression, and anxiety. (*Id.* at 22.)

The ALJ found that Plaintiff did not have any impairments or combination of impairments that met or equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 23-24.) Next, the ALJ determined Plaintiff's residual functional capacity ("RFC").[1] The ALJ found:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is able to perform simple, routine tasks involving simple work-related decisions and simple instructions. He is able to perform work that does not require more than occasional contact with the public and coworkers.

(*Id.* at 24-25.) Based on this RFC, the ALJ found that Plaintiff, though not capable of performing any past relevant work as defined at 20 C.F.R. § 404.1565 (*Id.* at 29), is capable of performing jobs such as hand packager, housekeeping cleaner, and retail marker (*Id.* at 30). Ultimately, having reviewed the medical evidence and testimony, the ALJ concluded that Plaintiff was not disabled from the alleged disability onset date through the date of the decision. (*Id.* at 31.)

## II.   LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider

---

[1] Residual functional capacity refers to the most a claimant can still do in a work setting despite his or her limitations. 20 C.F.R. § 404.1545(a)(1).

the entire record and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). The substantial evidence threshold "defers to the presiding ALJ, who has seen the hearing up close." *Biestek v. Berryhill*, — U.S. —, 139 S. Ct. 1148, 1157 (2019); *see also Thomas v. CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021) (noting substantial evidence "is an extremely deferential standard").

To determine whether a claimant is disabled, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

### III.   DISCUSSION

Plaintiff raises two arguments for the Court's consideration. First, Plaintiff contends that the ALJ erred in rejecting the opinion of his treating psychiatrist, Heather K. Boyle,

M.D. (Doc. 10 at 12.) Second, Plaintiff argues that the ALJ erred in rejecting his symptom testimony. (*Id.* at 19.)

### A. Treating Psychiatrist's Opinion

Plaintiff first argues that the "ALJ committed materially harmful error by rejecting the assessment from treating psychiatrist, Dr. Boyle, without providing sufficient explanation supported by substantial evidence, including failing to explain the consideration of the supportability and consistency factors under the agency's regulations for evaluation of medical source opinions." (*Id.* at 12.)

In 2017, the Commissioner revised the regulations for evaluating medical evidence for all claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). As Plaintiff's claim was filed after the effective date, the revised rules apply. (A.R. at 214-217.) Unlike the old regulations, the revised rules do not require an ALJ to defer to the opinions of a treating physician nor assign every medical opinion a specific evidentiary weight. 20 C.F.R. §§ 404.1520c(a), 416.920c(a); *see also Lester v. Charter*, 81 F.3d 821, 830–31 (9th Cir. 1995) (requiring an ALJ to provide "specific and legitimate reasons that are supported by substantial evidence in the record" when rejecting a treating physician's opinion).

The revised rules instead require the ALJ to consider all opinion evidence and determine the persuasiveness of each medical opinion's findings based on factors outlined in the regulations. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b). The most important factors considered by an ALJ are "consistency" and "supportability." 20 C.F.R. § 404.1520c(b)(2). Supportability is defined as how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical findings." 20 C.F.R. § 404.1520c(c)(1). Consistency means "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(2)). The ALJ should also treat opinions as more persuasive if they are more

consistent with "other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). Lastly, the ALJ can also consider, to a lesser degree, other factors, such as the length and purpose of the treatment relationship, the kinds of examinations performed, and whether the medical source actually examined the claimant. *Woods*, 32 F.4th at 792.

Recently, the Ninth Circuit held that the revised rules clearly intended to abrogate its precedent requiring ALJs to provide "specific and legitimate reasons" for rejecting a treating physician's opinion. *Id.* Nevertheless, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* Therefore, an ALJ, "must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how it considered the supportability and consistency factors' in reaching these findings." *Id.* (citing 20 C.F.R. § 404.1520c(b), (b)(2)) (internal citation omitted).

The record reflects that Dr. Boyle completed a Medical Assessment of the Patient's Ability to Perform Work Related Activity in April of 2021. (A.R. at 455-58.) In the assessment, Dr. Boyle considered the limitations that Plaintiff's psychological condition imposed upon four categories of essential, work-related abilities. (*Id.* at 455-57.) Those categories include Plaintiff's ability to understand, remember, and apply information (*id.* at 455); his ability to interact with others (*id.* at 456); his ability to adapt or manage himself (*id.*); and his ability to concentrate, persist, or maintain pace (*id.* at 457). In sum, Dr. Boyle found that Plaintiff has ten severe limitations, two moderately severe limitations, three moderate limitations, and three mild limitations. (*Id.* at 455-57.) Dr. Boyle also found that Plaintiff has no limitations in his ability to understand and remember simple instructions and his ability to be aware of normal hazards and take appropriate precautions. (*Id.* at 455-56.) Dr. Boyle concluded that Plaintiff would likely miss work more than three times a month due to his impairments or related treatment. (*Id.* at 458.)

Having considered these assessments, the ALJ found Dr. Boyle's opinion not

persuasive, concluding that it is "inconsistent with and unsupported by the evidence in the limited record." (*Id.* at 28-29.) The ALJ noted several specific inconsistencies. (*Id.* at 29.) For example, the ALJ rejected Dr. Boyle's claim that Plaintiff had severe limits "in his ability to travel to unfamiliar places" because "he took motorcycle rides and traveled to Tucson and Prescott after the alleged onset date." (*Id.*) Similarly, the ALJ rejected Dr. Boyle's assertion that Plaintiff had severe limits "accepting instructions and responding appropriately to criticism from supervisors" because "his interactions with his treating mental health providers do not indicate any inappropriate interactions." (*Id.*) Finally, the ALJ rejected Dr. Boyle's claim that Plaintiff had severe limits "with maintaining attention and concentration without interruptions from psychologically based symptoms and to perform[ing] activities within a schedule[,] maintain[ing] regular attendance[,] and be[ing] punctual" because Plaintiff "babysat his grandchildren for a two-week period and then for the summer after the alleged onset date" and exercised at Planet Fitness. (*Id.*)

The Court finds that the ALJ adequately addressed the supportability and consistency factors in finding Dr. Boyle's opinions unpersuasive. The ALJ sufficiently explained that Dr. Boyle's conclusions regarding Plaintiff's alleged severe limitations lacked support from the record and are inconsistent with the evidence from other medical sources. (*Id.* at 28-29.) Plaintiff, however, argues that the ALJ's reasoning is insufficient because (1) "the ALJ failed to show, and this record does not demonstrate, that a substantial part of a typical day was spent engaged in activities inconsistent with disabling limitations" (Doc. 10 at 14); (2) the ALJ did not "explain how [Plaintiff's] engagement in these limited activities, which were recommended and encouraged by his treating psychologist, without more, were transferable to a work setting" (*id.*); and (3) the ALJ failed to provide sufficient reasons why the supposed inconsistencies with Dr. Boyle's report, identified by the ALJ, warrant a rejection of Dr. Boyle's assessment (*id.* at 14, 16, 17). Plaintiff's arguments are unavailing.

Plaintiff first points to *Vertigan v. Halter* to support his claim that the ALJ could not reject Dr. Boyle's conclusions unless the ALJ specifically found that "a substantial part

of a typical day was spent engaged in activities inconsistent with disabling limitations." (*Id.* at 14) (citing *Vertigan v. Halter*, 260 F.3d 1044, 1049–50 (9th Cir. 2001)) (emphasis removed.) But Plaintiff isolates this holding from its proper context. The cited portion of *Vertigan* addresses when an ALJ may properly reject a *claimant's symptom testimony* based on the claimant's purportedly inconsistent activities, not when an ALJ may find a particular care provider's opinion unsupported by the record evidence.[2] 260 F.3d at 1049–50. *Vertigan* held that "the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability" and is therefore inapposite to the ALJ's analysis of Dr. Boyle's opinion. Instead, an ALJ may properly reject a medical opinion as inconsistent with a claimant's daily activities and other evidence in the record without regard to Plaintiff's own credibility determination. *See Gonzales v. Comm'r of Soc. Sec. Admin.*, 356 F. Supp. 3d 864, 878 (D. Ariz. 2018) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2018)).

Plaintiff next asserts that the ALJ failed to explain how Plaintiff's limited activities demonstrated his ability to work. (Doc. 10 at 14.) This argument, however, fails for the same reason as the first. Plaintiff cites many cases in support of this rule, but those cases only address when an ALJ may reject a claimant's symptom testimony.[3] (*Id.* at 14-16.) Plaintiff presents no authority to support his assertion that an ALJ must describe how a claimant's activities demonstrate their ability to work before rejecting a medical provider's opinion.

Plaintiff's final argument also fails. He asserts that the ALJ did not adequately explain why the identified inconsistencies with Dr. Boyle's report warrant a rejection of Dr. Boyle's assessment. (*Id.* at 14, 16, 17.) Specifically, Plaintiff argues that the ALJ merely listed some activities it deemed inconsistent with the disability claim, but should

---

[2] Plaintiff seems to be aware of this distinction, as he describes the Ninth Circuit as having held that such a finding "is a prerequisite for a *negative credibility determination* based on a claimant's activities." (Doc. 10 at 14) (emphasis added.) Nevertheless, Plaintiff attempts to apply the rule to whether the ALJ may reject Dr. Boyle's opinions based on Plaintiff's activities. (*Id.*)

[3] Plaintiff frequently notes in the parentheticals that the cited cases addressed an ALJ's rejection of a claimant's symptom testimony, not medical opinion evidence. (*Id.* at 14-16.)

- 7 -

have also discussed the "demands, frequency, or duration of those activities" in showing the inconsistency. (*Id.* at 14.) Additionally, Plaintiff claims that his travels and pleasant and cooperative demeanor while receiving treatment were inappropriate reasons to reject Dr. Boyle's assessment. (*Id.* at 16, 17.) Contrary to Plaintiff's assertions, the ALJ's reasoning was sufficient and appropriate. The ALJ clearly identified what aspects of Dr. Boyle's assessment were contradicted by the record. For example, the ALJ noted that Plaintiff's motorcycle travel across Arizona undermined Dr. Boyle's severe restriction on his ability to travel to unfamiliar places. (R. at 29.) As another example, the ALJ rejected Dr. Boyle's extremely limiting opinions because Plaintiff "babysat his grandchildren for a two-week period and then for the summer after the alleged onset date, which would require the ability to maintain attention without interruption for psychologically based symptoms." (A.R. at 29.) Unlike in many of the cases cited by Plaintiff, here the inconsistency is evident from the nature of Plaintiff's activity and the extent of his alleged limitations. The ALJ adequately explained that Dr. Boyle's extreme opinions regarding Plaintiff's social functioning were both unsupported and inconsistent with his documented behavior in the record. Thus, the Court finds that the ALJ provided substantial evidence for rejecting Dr. Boyle's opinion. *See Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir.1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.") Accordingly, the Court finds that the ALJ's decision not to credit Dr. Boyle's opinion was supported by substantial evidence and therefore not error. *See Vertigan*, 260 F.3d at 1049 ("Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.")

**B.    Plaintiff's Symptom Testimony**

Plaintiff argues that the "ALJ committed materially harmful error by rejecting Plaintiff's symptom testimony in the absence of specific, clear, and convincing reasons supported by substantial evidence in th[e] record as a whole." (*Id.* at 19.)

In evaluating a claimant's symptom testimony, the ALJ employs a two-step process. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ considers whether

the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc) (internal quotation marks omitted)). Second, if the claimant presents such evidence, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The Ninth Circuit has expressly held that a claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282 (internal citation omitted). The clear and convincing standard is the most demanding in Social Security cases. *Garrison*, 759 F.3d at 1015. And an ALJ's "vague allegation" that a claimant's symptom testimony is inconsistent with the medical record does not meet the clear and convincing standard. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102–03 (9th Cir. 2014). Similarly, an ALJ cannot satisfy the clear and convincing standard based solely upon "a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch*, 400 F.3d at 680. Rather, in making credibility determinations, an ALJ may consider a variety of factors in evaluating symptom testimony including, "[the claimant's] reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Soc. Sec. Admin., Comm'r*, 119 F.3d 789, 792 (9th Cir. 1997) (citations omitted).

In evaluating Plaintiff's testimony, the ALJ determined that step one was satisfied as Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. at 25.) The ALJ, however, rejected Plaintiff's symptom testimony because his "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other

evidence in the record." (*Id.*)

The ALJ thoroughly discussed multiple examples of medical evidence in the record that contradicted Plaintiff's symptom testimony. (*Id.* at 26-29.) For example, the ALJ noted that past examinations had revealed that Plaintiff had "good insight[,] judgment, attention[,] and concentration . . . [and h]is memory was intact." (*Id.* at 26.) Later checkups revealed progress as Plaintiff responded well to his medications and was increasingly able to leave the house. (*Id.*) In assessing his overall treatment, the ALJ concluded that Plaintiff's mental status examinations reflected that Plaintiff was "cooperative, with normal speech and thought processes, intact memory, and fair insight and judgment." (*Id.* at 27.) Further, the ALJ noted that consulting physicians found that Plaintiff is capable of working and is "fully oriented," although he would be limited to simple instructions and tasks with little social interaction.[4] (*Id.* at 27-28.)

The ALJ also provided sufficient reasons for rejecting Plaintiff's symptom testimony as inconsistent with his daily activities. The ALJ explained that, Plaintiff's ability "to perform household chores, ride a motorcycle, golf[,] and care for children . . . drive a car, obey traffic laws, drive to destinations without evidence of getting lost, and handle household finances" demonstrate that he is capable of following multi-step instructions. (*Id.* at 28.) Similarly, the ALJ found that Plaintiff's alleged inability to leave home due to his mental limitations is inconsistent with evidence that Plaintiff shoveled snow, took trips to the store, visited his daughter, went fishing, visited family, went to Tucson, went on motorcycle rides, joined a gym, played golf, and babysat his granddaughters for up to two weeks at a time. (*Id.*)

Plaintiff argues that the ALJ's reasoning is insufficient for four reasons. First, Plaintiff says that the ALJ's doubt about the severity of Plaintiff's symptoms is an insufficient reason to reject his symptom testimony. (Doc. 10 at 20.) Second, Plaintiff asserts that the ALJ's reasoning was not appropriately specific because the ALJ failed "to

---

[4] The ALJ found these opinions generally persuasive, but as explained below, rejected the consulting physicians' contention that Plaintiff was only capable of following one or two-step instructions. (A.R. at 27.)

- 10 -

connect the discussion of the medical evidence to a finding that any specific part of the symptom testimony lacked credibility." (*Id.* at 21.) Third, Plaintiff claims that the ALJ focused too narrowly on Plaintiff's improvement after treatment. (*Id.*) Finally, Plaintiff argues that the ALJ impermissibly relied on evidence of Plaintiff's allegedly inconsistent activities. (*Id.* at 22.) Plaintiff's arguments are unavailing.

Plaintiff's first argument fails because it mischaracterizes the ALJ as providing vague reasons for rejecting Plaintiff's testimony about the severity of her symptoms. (*Id.* at 20.) Plaintiff implies that the ALJ's analysis was confined to her belief that the reported severity of Plaintiff's symptoms is "not entirely consistent with the medical evidence" or with unspecified "other evidence in the record." (*Id.*) This is not so. As detailed above, the ALJ cited many specific reasons for discounting Plaintiff's testimony about the severity of his symptoms. While Plaintiff is not required to prove the severity of his symptoms, the ALJ is similarly not required to accept Plaintiff's symptom testimony at face-value. *Ahearn v. Saul*, 988 F.3d 1111, 1116 (9th Cir. 2021). Here, the ALJ provided clear and convincing reasons to reject Plaintiff's symptom testimony, including its inconsistency with the medical evidence and Plaintiff's daily activities, as summarized above.

Plaintiff's second argument similarly mischaracterizes the ALJ's analysis. Contrary to Plaintiff's allegations, the ALJ sufficiently connected her discussion of the medical evidence to a finding that specific parts of Plaintiff's symptom testimony lacked credibility. For example, as discussed in reference to Dr. Hogg's opinion, the ALJ identified specific evidence that contradicted Plaintiff's assertions that his social phobia and agoraphobia are so severe that he is substantially limited in his ability to leave his home. (A.R. at 28.) Additionally, the ALJ refuted Plaintiff's claims of severe limitations on his ability to reason and follow instructions, noting extensive evidence of Plaintiff's activities in the record that require those skills. (*Id.* at 26-29.)

Contrary to Plaintiff's third argument, the ALJ viewed Plaintiff's record of improvement "in the broader context of [Plaintiff's] impairments." (Doc. 10 at 21.) The ALJ relayed a detailed summary of the record evidence and appropriately evaluated

Plaintiff's treatment and related progress within that context. (A.R. at 26-29.) Rather than impermissibly relying solely on sporadic progress updates, the ALJ considered Plaintiff's consistent improvements with treatment, including his positive response to medication, alongside his ability to engage in daily activities and his positive examination results. (*Id.*) From the record as a whole, the ALJ concluded that "the clinical indications and treatment history overall, along with the claimant's activities of daily living and increased activities outside of the home, do not suggest the presence of more limiting symptoms." (*Id.* at 27.) The ALJ properly relied on evidence of Plaintiff's positive response to treatment to reject his symptom testimony in making that determination. *See Tommasetti*, 533 F.3d at 1040 (holding that favorable response to treatment undermines a claimant's reports regarding the disabling nature of his symptoms).

Finally, Plaintiff argues that the ALJ failed to demonstrate that Plaintiff regularly engaged in the allegedly inconsistent activities such that they constitute a clear and convincing reason to reject his symptom testimony under *Vertigan*. (Doc. 10 at 22.) In *Vertigan*, the Ninth Circuit stressed that a claimant's engagement in "certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." 260 F.3d at 1050. Instead, if the claimant can spend a substantial part of their day involved in the inconsistent activities, an ALJ may rely on those activities to discredit the claimant's allegations. *Id.* at 1049. Here, the ALJ noted that Plaintiff engaged in substantial activities that were inconsistent with his alleged limitations, including hosting his daughter and two grandchildren over the summer which "kept him too busy," riding his motorcycle with friends, taking multiple trips around Arizona, fishing, playing golf, working out in a public gym, housework, yard work, shopping, and paying bills. (A.R. at 26-27.) Thus, the ALJ properly determined that Plaintiff is not just engaged in the sort of limited, essential daily activities described by the court in *Vertigan* that would be consistent with the extent of disabling symptoms alleged. Instead, Plaintiff is engaged in substantial activities directly antithetical to the described severity of his symptoms.

Accordingly, the Court finds that the ALJ provided sufficiently specific, clear, and convincing reasons for rejecting Plaintiff's symptom testimony. Additionally, the Court finds that the ALJ's reasons for rejecting Plaintiff's symptom testimony are supported by substantial evidence in the record as a whole. Therefore, the ALJ's rejection of Plaintiff's symptom testimony was not error.

**IV.    CONCLUSION**

Accordingly,

**IT IS ORDERED** affirming the September 29, 2021 decision by the Administrative Law Judge and the Commissioner of the Social Security Administration.

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment consistent with this Order and close this case.

Dated this 30th day of August, 2023.

Michael T. Liburdi
United States District Judge